UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ABIGAIL OYOLA
    Plaintiff,

v.                                                                        No. 4:17-cv-40083-TSH

CAVALRY SPV I, LLC
    Defendant.

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Cavalry SPV I, LLC (Cavalry) does not dispute that it illegally garnished Ms. Oyola's wages for a period of nearly three years. Instead, Cavalry incredulously argues that Ms. Oyola has suffered no damages from its actions. Its argument fails for a variety of reasons.

First, the evidence presented by Cavalry shows that it continued to garnish her wages long after the state court default judgment had been vacated. It even continued to garnish her wages *after this lawsuit was filed*. It did nothing to correct these wrongful garnishments for months, and any contention that Ms. Oyola was made whole prior to the filing of this lawsuit falls flat on its face.

Second, many of the "refund" checks that Cavalry sent to Ms. Oyola are worthless. They are unendorsed checks made payable to Cavalry's state court attorney, and cannot be deposited by Ms. Oyola or her counsel.

Third, Cavalry has refused to pay Ms. Oyola interest on the funds it wrongfully took from her and maintained possession of for years. Massachusetts state law clearly requires the payment of interest for such converted funds.

Fourth, Cavalry has refused to pay Ms. Oyola any compensation for consequential and/or emotional damages resulting from the loss of these funds. As explained in the Complaint and below, Ms. Oyola and her family suffered greatly from the loss of these funds.

There should be no doubt that Ms. Oyola has suffered an injury in fact sufficient to meet the minimal threshold for Article III standing.

I.   **FACTS**

Cavalry does not dispute that it illegally garnished Ms. Oyola's wages for a period of nearly three years. (Mtn. to Dismiss, at 4 n.3). The garnishments were illegal for three reasons. First, it never served Ms. Oyola with process of the lawsuit against her, or its attempts to garnish her wages. (Complaint, at ¶¶ 20-24). Second, Cavalry was not registered as an entity with the Commonwealth of Massachusetts and was therefore prohibited from maintaining any lawsuit against Ms. Oyola pursuant to G.L. c. 156C, § 54(a). (Id. at ¶¶ 15-17). Third, by suing Ms. Oyola and ultimately garnishing her wages, Cavalry also illegally engaged in the business of a debt collector without a license to do so. (Id. at ¶¶ 18-19, 40-43).

On April 10, 2017, the Worcester District Court entered an order vacating the default judgment against Ms. Oyola. (**Exhibit A**). At that point, Cavalry had garnished a total of $6,498.21 in Ms. Oyola's wages. (**Exhibit B**). But her wages kept being garnished in April, May, June, July, and *even after this lawsuit had been filed*. (Decl. of Dial, Ex. B). Cavalry knew of these continued garnishments, but did nothing to stop them. *Id*. To date, Cavalry has garnished a total of $7,562.55 from Ms. Oyola's wages, some of which it has been in possession of for over 1,000 days. (Exhibit B). With interest, Ms. Oyola lost a total of $8,885.67. *Id*.

In addition to this clear economic harm, the loss of these wages caused Ms. Oyola significant consequential and emotional damages. As pled in the Complaint,

> During this time Ms. Oyola often could not afford to buy food. If she was unable to obtain supplies from a local food pantry, then she and her family went hungry. She often could not afford to pay bills, further damaging her credit and her automobile was repossessed due to the loss of improperly garnished wages leaving her without transportation. She lost sleep, experienced significant stress and anxiety, and suffered other physical, mental, and economic losses.

Complaint, at ¶ 27.

As explained below, Cavalry has provided a partial repayment of the garnished wages to Ms. Oyola, but it still owes her significant compensation for remaining unpaid and unremedied damages.

## II.   ARTICLE III STANDING

In its Motion to Dismiss, Cavalry places a great deal of undue emphasis on the U.S. Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). But the impact of *Spokeo* is far less reaching than suggested. The long-standing requirements of Article III standing are the same as they were before:

> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S., at 560, 112 S.Ct. 2130. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Id., at 560–561, 112 S.Ct. 2130; *Friends of the Earth, Inc.*, 528 U.S., at 180–181, 120 S.Ct. 693. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

136 S.Ct. at 1547. The *Spokeo* decision focused on the injury-in-fact element of standing, as

Cavalry does here. The Court merely reiterated pre-existing law that "the injury-in-fact

requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" Id.

at 1545 (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528

U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed. 2d 610 (2000)) (emphasis added).

In its analysis of the concreteness requirement, *Spokeo* re-affirmed that intangible injuries

can be concrete. *Id*. at 1549. A mere statutory procedural violation may, in some circumstances,

be sufficient to show a concrete injury, but that may not be the case where there is merely a "bare

procedural violation, divorced from any concrete harm." *Id*. at 1549. *That* is the impact of

Spokeo - that "even where Congress has accorded procedural rights to protect a concrete interest,

a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue

presents no material risk of harm to that underlying interest." *Girdler v. Convergent Outsourcing,*

*Inc.*, 15-cv-13359-DJC (D. Mass. December 29, 2016)

In *Spokeo*, the defendant operated an online search engine that provided contact

information for individuals. 136 S.Ct. at 1544. The Plaintiffs alleged that some of their personal

information listed on the website was inaccurate. *Id*. The Court held that, although the Ninth

Circuit Court of Appeals correctly determined that the particularity requirement was met, it

"overlooked" the concreteness requirement for determining injury in fact. *Id*. at 1545. In

subsequent dicta, the Court noted that it is difficult to imagine how an incorrect zip code, without

more, could result in concrete harm. *Id*. at 1550.

Following *Spokeo*, courts have continued to analyze Article III standing issues under the

same tests as before. For example, in *Girdler v. Convergent Outsourcing, Inc.*, 15-cv-13359-DJC

(D. Mass. December 29, 2016), this Court denied a defendant's motion for summary judgment,

in which it was alleged that the plaintiff in a Fair Debt Collection Practices Act lawsuit had failed to allege concrete damages under *Spokeo*. The plaintiff had alleged that defendant failed to provide her with various disclosures required under federal debt collection laws. In confirming that she had standing, the Court stated:

> Convergent's purported conduct thus presents a risk of harm to Girdler's concrete interest established by the FDCPA to be free of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. That is, such a violation harms Girdler's interest to be informed of the identity of the debt collector and the purpose of the call so as to allow her to make fair decisions regarding how to respond. *See Horowitz v. GC Servs. Ltd. P'ship*, No. 14-cv-2512-MMA-RBB, 2016 WL 7188238, at *7 (S.D. Cal. Dec. 12, 2016) (citations omitted). As reasoned by the Eleventh Circuit, "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) (per curium).

*Id*. at *5.

Cavalry's Motion to Dismiss only disputes the concreteness of Ms. Oyola's alleged injuries in Count One of her Complaint. No other aspects of Article III standing are challenged. As a result, the standard for determining whether she has suffered an injury in fact is minimal. A concrete injury is shown when "one sues under a statute alleging the very injury [the statute] is intended to prevent, and the injury has a close relationship to harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts." *Susinno v. Work Out World*, No. 3-15-cv-05881 at *10 (D. N.J. July 10, 2017).

## III.    ARGUMENT

There should be no doubt that Ms. Oyola has a concrete injury in this case. She has

suffered injuries that well-exceed the minimum threshold for Article III standing.

### A.  Ms. Oyola Has Suffered Unremedied Financial Injuries

Ms. Oyola's wages were illegally garnished for a period of nearly three full years.

Cavalry does not dispute this. Instead, it alleges that these damages are moot because "she had

been refunded all garnished funds" by the time this lawsuit was filed. (Mtn. to Dismiss at 6).

This is simply wrong.

On April 10, 2017, the Worcester District Court vacated the state court default judgment

upon which Cavalry had been garnishing Ms. Oyola's wages under the color of law. (Ex. A). To

date, it has garnished a total of $7,562.55 from Ms. Oyola's wages, some of which it has been in

possession of for over 1,000 days. *Id.* Under Massachusetts state law for conversion,

pre-judgment interest of 12% per annum has accrued on these funds, totalling $1,323.12. (Ex. B).

*Koski v. Haskins*, 128 N.E. 427, 428 (Mass. 1920) (the measure of damages is the fair market

value on the date of conversion, plus interest). Accordingly, Cavalry owes Ms. Oyola a total of

$8,885.67 for the illegally garnished wages, plus interest. *Id.*

However, to date Cavalry has only paid Ms. Oyola a total of $6,498.21 in depositable

funds. (Decl. of Dial, Ex. A) It has also forwarded several other checks to undersigned counsel,

but all such checks are unendorsed and made payable only to Cavalry's state-court counsel.

(Decl. of Dial, Ex. B) They cannot be deposited by Ms. Oyola or her counsel. (**Exhibit C**).

Moreover, Cavalry has not offered any payment for interest on the illegally garnished funds.

Accordingly, Cavalry still owes Ms. Oyola a total of $2,387.46 in direct financial damages.

**B. Ms. Oyola Has Suffered Significant Consequential and Emotional Damages**

Ms. Oyola has also suffered significant consequential and emotional damages from the loss the wrongfully garnished wages. As pled in the Complaint,

> During this time Ms. Oyola often could not afford to buy food. If she was unable to obtain supplies from a local food pantry, then she and her family went hungry. She often could not afford to pay bills, further damaging her credit and her automobile was repossessed due to the loss of improperly garnished wages leaving her without transportation. She lost sleep, experienced significant stress and anxiety, and suffered other physical, mental, and economic losses.

Complaint, at ¶ 27.

Cavalry incredulously suggests that these allegations are "threadbare," "formulaic," and "not traceable to Cavalry" (Mtn. to Dismiss, 3, 5, 7, and 9). But Cavalry was the only entity garnishing Ms. Oyola's wages. Any argument that damages for the loss of funds - which were illegally garnished by Cavalry - are not traceable to Cavalry, is simply baseless.

Ms. Oyola has sufficiently pled these consequential and emotional damages. State law standards for negligent or intentional infliction of emotional distress are not applicable in this context. *See Stagikas v. Saxon Mortgage Serv., Inc.*, 2013 WL 5373275 (D. Mass. Sept. 24, 2013); *In re Maxwell*, 281 B.R. 101 (Bankr. D. Mass. 2002).

Moreover, the consequential and emotional damages alleged by Ms. Oyola are clearly among the types of injuries that Congress was attempting to prevent in the Fair Debt Collection Practices Act, and are certainly the types of injuries that have formed the bases of lawsuits for centuries. In fact, Courts have continued to allow post-*Spokeo* cases to proceed on less allegations. *See Moore v. Blibaum & Associates, P.A.*, No. 17-1153 (4th Cir. July 19, 2017) (motion to dismiss FDCPA lawsuit denied because plaintiff alleged she suffered emotional

distress, anger, and frustration); *Big Apple Volkswagen, LLC v. Nisselson*, No. 11-11388 (JLG), 16-CV-5824 (RA), at *7 (S.D.N.Y. July 27, 2017) ("As a general matter, there can be little doubt that emotional harm has long been regarded as a harm providing a basis for a lawsuit in English and American courts.").

Cavalry has not in any way compensated Ms. Oyola for these damages. Instead, it argues that her emotional damages are worthless and that it's fully reimbursed her economic damages. As noted above, this reimbursement claim is baseless. Moreover, the cases upon which it purports to advance its arguments are wholly distinguishable.

In *Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017), the Court held that a plaintiff had not suffered a cognizable injury due to the defendant's failure to email her a copy of discovery requests that had already been mailed to her in a state court debt collection suit. Plaintiff had not showed how this damaged her in any way. In this case, though, Ms. Oyola has alleged that, among other things, she and her family went hungry as a result of the Cavalry's action.

In *Demmler v. ACH Food Companies, Inc*., No. 15-13556-LTS (D. Mass. June 9, 2016), the plaintiff brought a complaint for false labeling of barbeque sauce, seeking a modification of the label and attorney's fees. However, the defendant had already removed the product from stores, so no label modification was necessary, and it tendered a check for the maximum statutory damages to plaintiff. Ultimately, the Court concluded there was no further relief that it could award, and dismissed the case.

In *Hamilton v. General Mills, Inc*., No. 6:16-CV-382-MC, (D. Or. July 27, 2016), the plaintiff's only alleged injury was the loss of $15.98, the purchase price for mislabeled Cheerios. No other injuries were alleged. Accordingly, the case was dismissed due to defendant's refund.

*Epstein v. JPMorgan Chase & Co.*, No 13 CIV. 4744 KPF (S.D.N.Y. Mar. 21, 2014) involved a dispute of $0.67. No other damages were alleged. The case was dismissed because plaintiff had received a full refund of all damages approximately four months before he filed suit.

None of these cases involved the types of damages alleged here. Among other things, Ms. Oyola alleges that she couldn't afford food and that she and her family went hungry due to Cavalry's illegal wage garnishments. She alleges that she couldn't afford her bills, lost sleep, and experienced significant stress and anxiety. Cavalry has never compensated her for these damages, and to suggest that her case is similar to the loss of $0.67 is outrageous.

Moreover, it should be noted that Cavalry also claims that its argument is supported by *Luman v. Theismann*, 647 F. App'x 804 (9th Cir. 2016), which involved two separate plaintiffs. In that case, the defendant tendered a full refund to one plaintiff before the lawsuit was filed, and a full refund to the other plaintiff after the lawsuit was filed. The Court held that the plaintiff who had received a refund prior to filing suit no longer met the injury-in fact requirement, but that pursuant to the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), a post-filing settlement offer or offer of judgment does not render a case moot. Accordingly, it vacated the dismissal that had been entered against the other plaintiff.

Similarly, a full refund of Ms. Oyola's garnished wages had not been tendered before this lawsuit. In fact, her wages continued to be garnished even after the case was filed. Accordingly, there should be no doubt that she has Article III standing.

**C.  Ms. Oyola Has Federal Standing For Her State-Law Claims**

Count One of Ms. Oyola's Complaint alleges that Cavalry violated the Fair Debt

Collection Practices Act. It therefore asserts that federal jurisdiction is appropriate under 28

U.S.C. § 1331, as the case involves a federal question. However, Ms. Oyola also asserts claims

under state law pursuant to G.L. c. 93, § 24; G.L. c. 93A, § 2; and a common law claim for

conversion. Ms. Oyola claims federal supplemental jurisdiction is appropriate for these claims

under 28 U.S.C. § 1367.

Cavalry's Motion to Dismiss is limited only to Count One of Ms. Oyola's Complaint. By

knocking out this federal question, Cavalry apparently hopes to dismiss all other causes of action

from this Court. However, this strategy fails to appreciate the severity of Ms. Oyola's damages.

Ms. Oyola's damages in this case are so significant that federal court jurisdiction would

be appropriate under diversity jurisdiction even if her federal claim were to fail. *See Christensen*

*v. Financial Credit Service, Inc*., No. 1:15-CV-00134-KG-LF April 21, 2016 (D.N.M.) (Jury

awarded $200,000 in actual damages in claim for debt collector's wrongful collection of $3,000

from a consumer, in addition to punitive damages of $10 million); *Yazzie v. Law Offices of*

*Farrell & Seldin, et al.*, No. 1:10-cv-00292-BB-LFG, 2011 WL 10961199 (D.N.M.) (Jury

awarded $161,000 in emotional distress damages for debt collector's wrongful attempt to garnish

wages, despite the fact that no wages were actually garnished); *Lee v. Javitch, Block &*

*Rathborne, LLP*, No. 1:-6-cv-00585-SSB-TSH (S.D. Ohio) (Jury awarded $49,603 in damages to

plaintiff for illegal garnishment efforts by debt collector, while actual economic damages were

only $603).

As a result, Ms. Oyola contends that federal court jurisdiction on her state law claims

alone would be appropriate pursuant to 28 U.S.C. § 1332, as all parties are from different states and the amount in controversy is more than $75,000. Moreover, taking the allegations as pled, Ms. Oyola is also entitled to treble damages pursuant to G.L. c. 93A.

Accordingly, in the event that the Court dismisses Count One of Ms. Oyola's Complaint, she requests leave to file a First Amended Complaint to assert diversity jurisdiction for her remaining state law claims.


## IV.   CONCLUSION

For the foregoing reasons, Plaintiff Abigail Oyola respectfully requests that the Court deny Cavalry's Motion to Dismiss in its entirety.

Respectfully submitted,


Plaintiff,
Abigail Oyola,
By counsel,


*/s/ Christopher M. Brine*
Christopher M. Brine (BBO 679289)
Brine Consumer Law
100 Grove Street, Suite 210
Worcester, MA 01605
P - 508.556.1899
F - 508.556.9951
cmb@brineconsumerlaw.com


Donald A. Yarbrough, Esq.
Attorney for Plaintiff
Post Office Box 11842
Ft. Lauderdale, FL 33339
Telephone: 954-537-2000
Facsimile: 954-566-2235
don@donyarbrough.com

August 21, 2017


## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants on August 21,
2017.

*/s/ Christopher M. Brine*
Christopher M. Brine



| NOTICE TO THE PARTIES | DOCKET NUMBER<br>**0962CV001334** | **Trial Court of Massachusetts**<br>**District Court Department** |
|---|---|---|

CASE NAME   Cavalry Spv I, Llc As Assignee of Gmac, Llc v.  Abigail Oyola

| ATTORNEY (OR PRO SE PARTY) TO WHOM THIS COPY OF NOTICE IS ISSUED | COURT NAME & ADDRESS |
|---|---|
| Christopher Brine, Esq.<br>Brine Consumer Law<br>100 Grove Street, Suite 210<br>Worcester, MA 01605 | Worcester District Court<br>225 Main Street<br>Worcester, MA 01608 |

## TO THE PARTIES TO THIS CASE:

The enclosed indicates the Court's action in this matter.

Motion  To vacate default judgment allowed Hon. Paul F LoConto



| DATE ISSUED | CLERK-MAGISTRATE/ASST. CLERK |
|---|---|
| April 10, 2017 | Thomas J Noonan |

**EXHIBIT**

# B

| Check Date | Amount Garnished | Annual Interest Rate | Interest Per Day | Days Since Garnishment (to 8/7/17) | Total Reimbusement Amount |
|---|---|---|---|---|---|
| 8/29/14 | $227.90 | 12.00% | $0.0749 | 1074 | $308.37 |
| 9/12/14 | $121.77 | 12.00% | $0.0400 | 1060 | $164.21 |
| 9/26/14 | $196.18 | 12.00% | $0.0645 | 1046 | $263.64 |
| 10/10/14 | $37.41 | 12.00% | $0.0123 | 1032 | $50.10 |
| 10/24/14 | $74.21 | 12.00% | $0.0244 | 1019 | $99.07 |
| 11/7/14 | $149.26 | 12.00% | $0.0491 | 1005 | $198.58 |
| 11/21/14 | $93.61 | 12.00% | $0.0308 | 991 | $124.11 |
| 12/19/14 | $64.54 | 12.00% | $0.0212 | 963 | $84.97 |
| Yearly Total: | $964.88 | | | | $1,293.05 |
| | | | | | |
| 1/16/15 | $86.30 | 12.00% | $0.0284 | 935 | $112.83 |
| 1/30/15 | $41.43 | 12.00% | $0.0136 | 921 | $53.97 |
| 2/13/15 | $8.07 | 12.00% | $0.0027 | 907 | $10.48 |
| 2/27/15 | $11.64 | 12.00% | $0.0038 | 893 | $15.06 |
| 3/13/15 | $74.55 | 12.00% | $0.0245 | 879 | $96.09 |
| 3/27/15 | $5.37 | 12.00% | $0.0018 | 865 | $6.90 |
| 4/10/15 | $47.11 | 12.00% | $0.0155 | 851 | $60.29 |
| 4/24/15 | $126.01 | 12.00% | $0.0414 | 837 | $160.69 |
| 5/8/15 | $135.01 | 12.00% | $0.0444 | 823 | $171.54 |
| 5/22/15 | $145.56 | 12.00% | $0.0479 | 809 | $184.27 |
| 6/5/15 | $214.79 | 12.00% | $0.0706 | 795 | $270.93 |
| 6/19/15 | $137.59 | 12.00% | $0.0452 | 781 | $172.92 |
| 7/2/15 | $157.01 | 12.00% | $0.0516 | 768 | $196.65 |
| 7/17/15 | $227.51 | 12.00% | $0.0748 | 753 | $283.83 |
| 7/31/15 | $177.94 | 12.00% | $0.0585 | 739 | $221.17 |
| 8/14/15 | $110.08 | 12.00% | $0.0362 | 725 | $136.32 |
| 8/28/15 | $42.27 | 12.00% | $0.0139 | 711 | $52.15 |
| 9/11/15 | $118.30 | 12.00% | $0.0389 | 697 | $145.41 |
| 9/11/15 | $122.35 | 12.00% | $0.0402 | 697 | $150.39 |
| 9/25/15 | $149.78 | 12.00% | $0.0492 | 683 | $183.41 |
| 10/9/15 | $130.32 | 12.00% | $0.0428 | 669 | $158.98 |
| 10/23/15 | $141.93 | 12.00% | $0.0467 | 655 | $172.49 |
| 11/6/15 | $141.93 | 12.00% | $0.0467 | 641 | $171.84 |
| 11/20/15 | $229.35 | 12.00% | $0.0754 | 627 | $276.63 |
| 12/4/15 | $93.07 | 12.00% | $0.0306 | 613 | $111.83 |
| 12/18/15 | $165.09 | 12.00% | $0.0543 | 599 | $197.60 |
| 12/31/15 | $84.44 | 12.00% | $0.0278 | 586 | $100.71 |
| Yearly Total: | $3,124.80 | | | | $3,875.38 |
| | | | | | |
| 1/15/16 | $106.11 | 12.00% | $0.0349 | 571 | $126.03 |
| 1/29/16 | $13.15 | 12.00% | $0.0043 | 556 | $15.55 |
| 2/12/16 | $189.63 | 12.00% | $0.0623 | 543 | $223.48 |
| 2/12/16 | $13.94 | 12.00% | $0.0046 | 543 | $16.43 |
| 2/26/16 | $9.69 | 12.00% | $0.0032 | 529 | $11.38 |
| 3/11/16 | $25.76 | 12.00% | $0.0085 | 515 | $30.12 |
| 4/22/16 | $4.77 | 12.00% | $0.0016 | 473 | $5.51 |
| 6/3/16 | $157.25 | 12.00% | $0.0517 | 431 | $179.53 |

| | | | | | |
|---|---|---|---|---|---|
| 9/9/16 | $188.83 | 12.00% | $0.0621 | 333 | $209.50 |
| 11/18/16 | $188.42 | 12.00% | $0.0619 | 263 | $204.71 |
| 12/2/16 | $187.36 | 12.00% | $0.0616 | 249 | $202.70 |
| 12/16/16 | $184.64 | 12.00% | $0.0607 | 235 | $198.91 |
| 12/30/16 | $188.92 | 12.00% | $0.0621 | 221 | $202.65 |
| Yearly Total: | $1,458.47 | | | | $1,626.50 |
| | | | | | |
| 1/13/17 | $212.13 | 12.00% | $0.0697 | 207 | $226.57 |
| 1/27/17 | $160.32 | 12.00% | $0.0527 | 193 | $170.49 |
| 2/10/17 | $156.35 | 12.00% | $0.0514 | 179 | $165.55 |
| 2/24/17 | $92.71 | 12.00% | $0.0305 | 165 | $97.74 |
| 3/10/17 | $112.04 | 12.00% | $0.0368 | 151 | $117.60 |
| 3/24/17 | $2.38 | 12.00% | $0.0008 | 137 | $2.49 |
| 4/7/17 | $214.13 | 12.00% | $0.0704 | 122 | $222.72 |
| 4/21/17 | $119.97 | 12.00% | $0.0394 | 108 | $124.23 |
| 5/5/17 | $150.33 | 12.00% | $0.0494 | 94 | $154.98 |
| 5/19/17 | $197.73 | 12.00% | $0.0650 | 80 | $202.93 |
| 6/2/17 | $197.74 | 12.00% | $0.0650 | 66 | $202.03 |
| 6/16/17 | $183.63 | 12.00% | $0.0604 | 52 | $186.77 |
| 7/14/17 | $214.94 | 12.00% | $0.0707 | 24 | $216.64 |
| Yearly Total: | $2,014.40 | 12.00% | | Subtotal: | $2,090.73 |
| | | | | | |
| Subtotal: | $7,562.55 | | | TOTAL: | $8,885.67 |

 by Google

**Christopher Brine <cmb@brineconsumerlaw.com>**

## (no subject)
1 message

**Hernandez, Stephanie** <shernandez@leominstercu.com>          Wed, Jun 21, 2017 at 2:47 PM
To: Christopher Brine <cmb@brineconsumerlaw.com>

Hello Christopher,

I received your message regarding the checks that you were looking to negotiate through your IOLTA account. Unfortunately the creditor would have to reissue the checks made payable to your business as the accounts would have to be deposited into a like titled account to be accepted for deposit. I apologize in advance for any inconveniences that this may cause.


Thank you.


**Stephanie Hernandez • Branch Manager II**

**Leominster Credit Union**

**NMLS# 655049**

20 Adams Street

Leominster, MA 01453

Direct: 978-466-7284

Fax: 978-466-7297

shernandez@leominstercu.com

http://www.leominstercu.com



```
EXHIBIT
   C
```

INFORMATION SECURITY NOTICE: Helping protect your personal information while it is in our possession is very important to us. Please help us in this regard and never include non-public personal information such as account numbers, social security numbers in the e-mail's subject or body text. This information should only be sent to us in an encrypted e-mail.

CONFIDENTIALITY: The information transmitted in this email may contain confidential and/or privileged material and is intended only for the person or entity to which it is addressed. Any review, retransmission, dissemination or other use of, or taking of any action by persons or entities other than the intended recipient is prohibited and may be unlawful. If you are not the intended recipient, please delete the information from your system and contact the sender.