UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABIGAIL OYOLA,<br><br>   Plaintiff,<br><br> v.<br><br>CAVALRY SPV I, LLC and<br>JOHN DOE 1 THROUGH 5,<br><br>   Defendants. | CIVIL ACTION<br><br>NO. 4:17-cv-40083-TSH |

**REPORT AND RECOMMENDATION**

**March 1, 2018**

Hennessy, M.J.

  Before me by way of referral, see Docket #29, is the motion of Defendant Cavalry SPV I, LLC ("Cavalry") to dismiss the complaint in this action for lack of subject-matter jurisdiction, Docket #19. Cavalry argues that Plaintiff Abigail Oyola lacks standing to pursue her claims and also contends this case is moot. See Docket #20. Plaintiff has opposed the motion, see Docket #28, and Cavalry has submitted a reply, see Docket #31. In light of the parties' submissions, and for the reasons that follow, I find that Plaintiff has standing to prosecute this action, find that the case is not moot, and RECOMMEND that the Court DENY Cavalry's motion to dismiss.

I.  BACKGROUND

  Plaintiff accuses Cavalry and five unknown individuals named as John Does 1-5[1] of violating the federal Fair Debt Collection Practices Act (the "FDCPA"), Massachusetts Debt

---
[1] The present motion is filed only by Defendant Cavalry.

1

Collection Practices Act, and Massachusetts Consumer Protection Act, as well as committing conversion. See generally Docket #1. Her complaint alleges as follows.[2]

Plaintiff contends that Cavalry is a "debt collector" as defined in the federal and Massachusetts Debt Collection Practices Acts.[3] Id. ¶ 6. In December 2007, Cavalry purchased a defaulted debt that Plaintiff owed on a personal credit card. Id. ¶¶ 12-13. In April 2009, Cavalry filed a collection action against Plaintiff in Worcester District Court in an effort to collect this debt, id. ¶ 14; but Cavalry was not legally entitled to file that lawsuit because it had failed to register with the Secretary of the Commonwealth, as all limited liability companies foreign to Massachusetts must do to access the Massachusetts courts, id. ¶¶ 15-17 (citing Mass. Gen. Laws ch. 156C §§ 48, 54(a)). Further, Cavalry was not (and still is not) licensed to operate as a debt collector in Massachusetts. Id. ¶ 18.

According to Plaintiff, Cavalry "purported to serve her" with process of this first debt collection suit at an address from which Plaintiff had been evicted six months earlier. Id. ¶ 21. Plaintiff never received process and thus defaulted in December 2009, resulting in a default judgment of $14,947.30 in Calvary's favor. Id. ¶ 22. Cavalry later filed a second, post-judgment proceeding in February 2010 in an effort to collect that judgment. Id. ¶ 23. Cavalry again served process at Plaintiff's former address, this time around eighteen months after Plaintiff's eviction. Id. When Plaintiff, who again did not know about Cavalry's legal action, failed to appear, a civil warrant for her arrest issued. Id.

---

[2] For purposes of this Rule 12(b)(1) motion, the Court assumes the complaint's allegations are true and draws all reasonable inferences in Plaintiff's favor. See, e.g., Kerin v. Titeflex Corp, 770 F.3d 978, 981 (1st Cir. 2014); Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012) (citing Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)); Igartua v. United States, 86 F. Supp. 3d 50, 53 (D.P.R. 2015) (citing Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994)); see also infra Section II.

[3] See 15 U.S.C. § 1692a(6); Mass. Gen. Laws ch. 93 § 24.

2

Finally, in April 2014, Cavalry filed a third action against Plaintiff, this time a post-judgment trustee process action. Id. ¶ 24. Again Cavalry served process on Plaintiff's former address, at this point obsolete by around three years, and again Plaintiff did not receive process and thus did not know about the suit. Id. After Plaintiff failed to appear in this third action, a judge entered an order authorizing Cavalry to garnish Plaintiff's wages. Id. Plaintiff did not learn of Cavalry's three lawsuits until 2017 and retained counsel at that time. Id. ¶ 26.

Pursuant to the garnishment order, Cavalry garnished Plaintiff's wages from August 2014 through April 2017 in a total amount of $6,498.21. Id. ¶ 25. Further, Plaintiff's opposition brief accuses Cavalry of continuing to garnish Plaintiff's wages after the instant federal lawsuit was filed in a total additional amount of $1,064.34. See Docket #26 at 2; see also Docket #1 ¶ 29. Plaintiff's paystubs offered no information about these subtractions aside from a general notation that they effected a "garnishment." Docket #1 ¶ 26. Plaintiff did not know what the garnishment was for or to whom it was being paid, and she incorrectly assumed that one of around five other creditors who also had obtained judgments against her was responsible for it. Id.

Plaintiff explicitly alleges that she "has incurred actual damages as a result of Cavalry's actions." Id. ¶ 27. These actual damages include the default judgment against her and the civil warrant for her arrest, both of which issued without her knowledge, as well as the loss of significant income throughout the multi-year period when Cavalry garnished her wages. Id. The complaint elaborates that Calvary's garnishment rendered Plaintiff too destitute to afford food: "If she was unable to obtain supplies from a local food pantry, then she and her family went hungry." Id. Plaintiff also often could not afford to pay her bills; her credit score decreased; and creditors repossessed her car, leaving her without transportation. Id. Cavalry's actions also

allegedly caused Plaintiff emotional distress including lost sleep and significant stress and anxiety. Id.

Cavalry has responded to Plaintiff's allegations with factual representations of its own. According to a declaration appended to Cavalry's opening brief,[4] the 2009 default judgment against Plaintiff was vacated in April 2017, at which time Cavalry's counsel voluntarily dismissed Cavalry's garnishment action and "promptly issued a refund to Plaintiff on Cavalry's behalf for the full amount that had been garnished." Docket #20 at 4; see Docket #22-1 ¶¶ 4-6; see also Docket #20-1 at 4-5 (Cavalry's refund check and accompanying paperwork). The declaration further states that Cavalry's attorney contacted Plaintiff's employer and its payroll company to alert them of the garnishment action's voluntary dismissal. Docket #22-1 ¶ 7. Despite this, Plaintiff's wages continued to be garnished—but Cavalry's attorney immediately forwarded to Plaintiff's counsel any garnishment checks from Plaintiff's wages that Cavalry received. Id. ¶ 7. While Cavalry admits to having garnished a total of $7,532.55 from Plaintiff's wages, it submits that this sum already has been returned to Plaintiff and that Plaintiff therefore already has been made whole. Id. ¶ 8; Docket #20 at 4.

In response, Plaintiff's opposition brief avers that Cavalry's efforts to fully repay Plaintiff were unsuccessful. On Plaintiff's telling, Cavalry has sent her only $6,498.21 in depositable funds[5] of the $7,562.55 it has taken from her wages, leaving an unpaid balance of $1,064.34. Docket #26 at 2. Checks totaling this amount that were forwarded from Cavalry to Plaintiff's attorney after this lawsuit began allegedly have arrived unendorsed and made payable only to

---

[4] Due to an initial filing error, this declaration ultimately was assigned docket number 22-1.

[5] This amount appears to be the sum of two checks mailed from Cavalry's counsel to Plaintiff on April 17 and May 5, 2017. See Docket 20-1 at 4-8. The check dated April 17, 2017 was issued to Cavalry's counsel. See id. at 8. Because Plaintiff was able to negotiate that check, the Court has reason to infer that Cavalry's counsel endorsed it before mailing it to Plaintiff's counsel.

Cavalry's own attorneys.  Id.  Plaintiff says she therefore has proven unable to negotiate those checks and her bank has instructed that the checks would have to be reissued in her attorney's name in order for her attorney to deposit them into his IOLTA account.  Id.; see id. at 16.

Cavalry offers three legal arguments for dismissing this case for lack of subject-matter jurisdiction.  First, it submits that it has fully repaid Plaintiff all the money it garnished from her wages, rendering Plaintiff without standing and mooting this case.  Docket #20 at 5.  Second, Cavalry casts Plaintiff's allegations of emotional and consequential damages as "threadbare" and thus insufficient to confer standing to maintain this action.  Id.  And third, Cavalry urges that Plaintiff's federal statutory causes of action also do not confer standing here.  Id.[6]

## II.    STANDARD

### A.    Rule 12(b)(1)

"A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is appropriate when the plaintiff lacks standing to bring the claim."  Oum v. Wells Fargo, N.A., 842 F. Supp. 2d 407, 411 (D. Mass. 2012), abrogated on other grounds by Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282 (1st Cir. 2013) (quoting Edelkind v. Fairmont Funding, Ltd., 539 F. Supp. 2d 449, 453 (D. Mass. 2008)).  Courts assess such motions using the familiar standard applicable to motions filed under Federal Rule of Civil Procedure 12(b)(6): a complaint's well-pleaded facts must be credited as true, and all reasonable inferences from the complaint must be drawn in the plaintiff's favor.  See, e.g., Kerin v. Titeflex Corp, 770 F.3d 978, 981 (1st Cir. 2014); Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012) (citing Nisselson v.

---

[6] Plaintiff has not pleaded diversity jurisdiction.  This Court therefore would lack subject-matter jurisdiction over her state-law claims if her federal claim, from which supplemental jurisdiction presently arises, were dismissed. Plaintiff has argued that diversity jurisdiction would lie if her federal claim were dismissed and has conditionally requested leave to amend her complaint in order to assert diversity jurisdiction if Cavalry's motion to dismiss is granted.  See Docket #26 at 10-11.  Because I recommend that the motion be denied, I do not address Plaintiff's conditional request for leave to amend her complaint.

Lernout, 469 F.3d 143, 150 (1st Cir. 2006)); Igartua v. United States, 86 F. Supp. 3d 50, 53 (D.P.R. 2015) (citing Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994)). However, a party's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" merit no assumption of truth. Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)); see Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Unlike in a Rule 12(b)(6) motion, when determining whether subject-matter jurisdiction lies, the Court may look beyond the pleadings to "whatever evidence has been submitted." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996). "The party seeking to invoke the federal court's jurisdiction—normally, the plaintiff—bears the burden" of establishing it. Osediacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir. 2005) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

      B.      Article III Standing

The Constitution constrains the federal courts' jurisdiction to "cases and controversies" only. U.S. Const. Art. III, § 2. Within this limitation lies the concept of standing, which requires a plaintiff to satisfy certain requirements in order for a federal court to hear his or her case. Article III standing includes both constitutional and prudential criteria; but Cavarly's arguments focus only on its constitutional components. See Docket #20 at 5. Those components are: first, the plaintiff must allege an "injury in fact"; second, that injury must be fairly traceable to the defendant; and third, the injury must likely be redressable by a favorable judicial decision. E.g., Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan, 504 U.S. at 560-61; Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81 (2000)).

The party asserting standing, here the plaintiff, bears the burden of establishing it. E.g., id. (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)). And when, as here, a standing

challenge arises at the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating'" each of standing's elements. Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)). This means "[t]he facts necessary to support standing must clearly appear in the record and 'cannot be inferred argumentatively from averments in the pleadings.'" United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992) (quoting FW/PBS, 493 U.S. at 231) (noting that "where standing is at issue, heightened specificity is obligatory at the pleading stage"). That said, standing typically poses a low bar and is "readily found" when challenged. 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.4 (3d ed. 1998) (Apr. 2017 Supp.) (collecting cases).

Cavalry's Article III standing arguments implicate the first two constitutional requirements, namely, injury in fact and causation. The first prong—injury in fact—requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560). More precisely, to demonstrate standing, "a plaintiff need only show that she has 'a colorable claim'" of such an invasion—anything more goes to the merits of the plaintiff's claim, not the plaintiff's standing to raise the claim in the first place. Merrimon v. Unum Life Ins. Co., 758 F.3d 46, 52-53 (1st Cir. 2014) (quoting Aurora Loan Servs., Inc. v. Craddieth, 442 F.3d 1018, 1024 (7th Cir. 2006)). The U.S. Supreme Court has described a sufficiently "particularized" injury using labels including "personal," "distinct," and "not 'undifferentiated.'" Spokeo, 136 S. Ct. at 1548 (first quoting Lujan, 504 U.S. at 560 n.1, and DiamlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006); then quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990); and then quoting United States v. Richardson, 418 U.S. 166, 177 (1974)). And a "concrete" injury is one that is "de facto," meaning that it "actually exist[s]" and is thus "'real,'

and not 'abstract.'" Id. (quoting Webster's Third New International Dictionary 472 (1971)) (citing Black's Law Dictionary 479 (9th ed. 2009)). A plaintiff's injury must be both particularized and concrete in order for the injury in fact requirement to be satisfied. E.g., id. at 1548.

Notably, economic injury is a paradigmatic injury in fact typically sufficient to establish Article III standing. See Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 983 (2017) (citing McGowan v. Maryland, 366 U.S. 420, 430-31 (1961)) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 291 (3d Cir. 2005) (Alito, J.) (quoted by 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.4 (3d ed.) (Apr. 2017 Supp.)) ("While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms."); San Diego Cty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."); Katz, 672 F.3d at 76 (quoting Adams v. Watson, 10 F.3d 915, 924 (1st Cir. 1993)) ("It is a bedrock proposition that 'a relatively small economic loss—even an 'identifiable trifle'—is enough [to be an injury in fact] . . . ."). Additionally, "emotional upset is a relevant consideration" when assessing standing "in a damages action." City of Los Angeles v. Lyons, 461 U.S. 95, 107 n.8 (1983).

Second, a plaintiff's injury also must be "fairly traceable to the defendant" in order to establish standing. E.g., Spokeo, 136 S. Ct. at 1547 (citations omitted). In general terms, this means a plaintiff must "show a sufficiently direct causal connection, which 'cannot be overly attenuated,' between the challenged action and the identified harm." Williams v. Puerto Rico, 910 F. Supp. 2d 386, 390 (D.P.R. 2012) (quoting Donahue v. City of Boston, 304 F.3d 110, 115 (1st Cir. 2002)). The causal chain on which a plaintiff's allegations rest must amount to

"something more than an ingenious academic exercise in the conceivable." Adams, 10 F.3d at 922 (quoting United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 689 (1973)). "In other words, the opposing party must be the source of the harm." Municipality of San Sebastian v. Puerto Rico, 89 F. Supp. 3d 266, 274 (D.P.R. 2015) (quoting Katz, 672 F.3d at 71).[7]

    C.      Statutory Standing

A separate and distinct form of standing, known as statutory standing, arises from congressional action rather than the Constitution. This type of standing "is a horse of a different hue" that "relates to whether the plaintiff has a cause of action under a particular statute." United States v. Catala, 870 F.3d 6, 10 (1st Cir. 2017) (citing Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1387-88 n.4 (2014)). It stems from Congress's "power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." Spokeo, 136 S. Ct. at 1549 (quoting Lujan, 504 U.S. at 580 (Kennedy, J., concurring)). By passing a statute that creates a new legally-protected interest, Congress can "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." Id. (alteration in original) (quoting Lujan, 504 U.S. at 578). This renders "the violation of a procedural right granted by statute . . . sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." Id. (emphasis removed) (citing Fed. Election Comm'n v. Akins, 524 U.S. 11, 20-25 (1998); Pub. Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989)).

---

[7] The third prong of Article III standing requires that the plaintiff's injury likely be redressable by a favorable court decision. E.g., Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citations omitted). Cavalry does not challenge Plaintiff's standing on this ground, which merits no further discussion here.

9

Unlike Article III standing, statutory standing "is not a prerequisite to a court's power to adjudicate a case." Catala, 870 F.3d at 10 (citing Lexmark Intern., Inc., 134 S. Ct. at 1387-88 n.4 (noting that statutory standing "does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case")). And because "statutory standing is inherently non-jurisdictional, . . . challenges to it should be brought by way of a 12(b)(6) motion, a summary judgment motion, or arguments on the merits—not by way of a 12(b)(1) motion." Wallach v. Eaton Corp., 837 F.3d 356, 363 n.9 (3d Cir. 2016) (citations omitted); accord Katz v. Pershing, LLC, 806 F. Supp. 2d 452, 456 (D. Mass. 2011), aff'd, 672 F.3d 64 (1st Cir. 2012) (citation omitted) (quoting Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n.2 (5th Cir. 2011)).

    D.    Mootness

Mootness is properly raised in a Rule 12(b)(1) motion to dismiss. E.g., Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). This occurs "only when it is impossible for a court to grant 'any effectual relief whatever to the prevailing party.' '[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" E.g., Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 308 (2012) (alteration in original) (quoting City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000), then quoting Ellis v. Ry. Clerks, 466 U.S. 435, 442 (1984)). "The burden of demonstrating mootness 'is a heavy one.'" Davis, 440 U.S. at 631 (citing United States v. W.T. Grant Co., 345 U.S. 629, 632-33 (1953)); see Town of Barnstable v. O'Connor, 786 F.3d 130, 142 (1st Cir. 2015).

III.  ANALYSIS

   A.  Article III Standing

Cavalry's arguments respecting Article III standing address the injury in fact and causation prongs. I address these prongs sequentially.

   1.  Injury in fact

First, Cavalry urges that Plaintiff has not suffered an injury sufficiently particularized and concrete to establish Article III standing. In support, Cavalry asserts that Plaintiff no longer suffers an injury because Cavalry already has made Plaintiff whole by returning to her all the money it garnished from her wages. See Docket #20 at 6-8; Docket #31 at 3-5. Cavalry then cites the Supreme Court's opinion in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), for the proposition that a mere procedural violation of a federal statute, without anything more, does not give rise to standing. See Docket #20 at 10. And finally, Cavalry dismisses Plaintiff's claims of emotional distress and consequential damages as "threadbare" and "scattershot" such that they fail to generate standing, as well. See id. at 7-8. I find these arguments unpersuasive.

To begin, Cavalry's opening brief emphasizes that it returned all the garnished funds to Plaintiff before this suit began by forwarding to Plaintiff all the checks it received from the payroll company that administered Plaintiff's paychecks. See Docket #20 at 6. But Plaintiff's opposition brief undermines this premise, explaining that two checks (totaling $1064.34 in garnished wages) that Cavalry sent her were issued to Cavalry's attorneys, bore no endorsement, and thus could not be negotiated by Plaintiff or her counsel. Docket #26 at 6. In its reply, Cavalry counters that Plaintiff never told Cavalry about this issue, and Cavalry claims it would have remedied the problem had Plaintiff made Cavalry aware of it. Docket #31 at 4-5.

Cavalry's hypothetical—in which Plaintiff alerts Cavalry to the fact that Cavalry mailed her deficient checks and Cavalry then cures the deficiency—is beside the point. Plaintiff's complaint alleges that Cavalry's garnishment persisted after the state-court judgments were vacated (and indeed, that it continued after this lawsuit began). See Docket #1 ¶ 29. For present purposes, that allegation must be credited as true—and Cavalry's submissions reveal it to be accurate. See Docket #20-1 at 15-20 (documenting garnishments taken in June and July 2017, after this lawsuit was filed). Images of the fronts of Cavalry's refund checks verify that all but one were written to Cavalry's own attorneys. See Docket #20-1 at 3-20. Plaintiff also has submitted what appears to be an email from a representative of Leominster Credit Union informing Plaintiff's counsel that "the creditor would have to reissue the checks made payable to your business as the [checks] would have to be deposited into a like titled account to be accepted for deposit." Docket #26 at 16. Furthermore, I note that for all its protestations, Cavalry has not actually asserted that Plaintiff's representation about the checks is untrue.

Considering all the evidence submitted to date, see Aversa, 99 F.3d at 1210, I therefore find, for purposes of this motion, that Cavalry mailed Plaintiff nonnegotiable refund checks. And because those checks are nonnegotiable, Cavalry retains $1,064.34 to which Plaintiff is legally entitled. A significant portion of Plaintiff's alleged economic injury thus stands unremedied. That concrete and particularized economic injury constitutes an injury in fact sufficient to confer standing here. See Czyzewski, 137 S. Ct. at 983; Danvers Motor Co., 432 F.3d at 291; San Diego Cnty. Gun Rights Comm., 98 F.3d at 1130; Katz, 672 F.3d at 76; accord 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.4 (3d ed.) (Apr. 2017 Supp.).

Separately, I find that Plaintiff's allegation that Cavalry's garnishment caused a decrease in her credit score is itself sufficient to state a cognizable injury in fact. See, e.g., Boone v. T-Mobile USA Inc., Civ. No. 17-378-KM-MAH, 2018 WL 588927, at *9 (D.N.J. Jan. 29, 2018) (collecting cases); Green v. Rentgrow, Inc., No. 2:16cv421, 2016 WL 7018564, at *7-8 (E.D. Va. Nov. 10, 2016), report and recommendation adopted, 2016 WL 7031287 (E.D. Va. Nov. 30, 2016) (collecting cases). Even on this ground alone, Plaintiff has Article III standing in this case.

I further find that Cavalry's arguments fail to account for some of the harm its garnishment allegedly caused Plaintiff over time. At the core of this case is Plaintiff's allegation that Cavalry illegally denied her the right to possess and dispose of her wages, causing her to suffer real consequences—including, among other things, the inability to buy food and feed her family. Merely refunding Plaintiff's money dollar-for-dollar may not fully compensate Plaintiff for the alleged deprivation of her right to have and spend her wages as she saw fit. This, too, is a concrete and particularized injury arising from Cavalry's alleged conduct. See Mateer v. Ross, Suchoff, Egert, Hankin, Maidenbaum & Mazel, P.C., No. 96 CIV. 1756(LAP), 1997 WL 171011, at *2, *5 (S.D.N.Y. Apr. 10, 1997) (finding an injury in fact "plainly present" where a plaintiff's bank account was frozen, allegedly causing the plaintiff to miss bill payments, face eviction threats, and suffer severe stress).

I also reject Cavalry's efforts to minimize Plaintiff's well-pled allegations of emotional damages. Plaintiff's complaint alleges that due to Cavalry's wage garnishment,

> Ms. Oyola has incurred actual damages as a result of Cavalry's actions. A default judgment and a civil arrest warrant were issued against her, without her knowledge. Moreover, a significant portion of her income was garnished over a span of nearly three years, causing Ms. Oyola and her family significant hardship. During this time Ms. Oyola often could not afford to buy food. If she was unable to obtain supplies from a local food pantry, then she and her family went hungry.

13

> She often could not afford to pay bills, further damaging her credit[,] and her automobile was repossessed due to the loss of improperly garnished wages[,] leaving her without transportation. She lost sleep, experienced significant stress and anxiety, and suffered other physical, mental, and economic losses.

Docket #1 ¶ 27. Cavalry's assertion that these allegations fail to state "actual, serious emotional distress traceable to proscribed debt collection practices," Docket #20 at 7 (quoting Tyree v. Ocwen Loan Servicing, No. 2:14-cv-02114, 2016 WL 6210677, at *5 (W.D. Tenn. Oct. 24, 2016)), is incorrect.[8] To the contrary, the allegations are substantial. They identify specific harms and tie those harms directly to Cavalry's alleged conduct. Accepting as true Plaintiff's allegation that the garnishment impacted basic needs like food and transportation, her plausible claims of emotional distress state cognizable injuries sufficient to survive this motion to dismiss.

Because I find that Plaintiff has alleged the injuries in fact discussed above, it follows that Plaintiff's complaint pleads more than a "mere procedural violation" of the FDCPA as Cavalry claims. Plaintiff accuses Cavalry not only of suing her in violation of the FDCPA's technical requirements, but also of taking thousands of dollars from her paychecks over a period of years, including (as set forth in Plaintiff's opposition brief) multiple times after this lawsuit began. Cavalry's filings fail to account for this critical fact. Instead, Cavalry cites a number of cases in which the plaintiff alleged little more than a bare procedural violation unto itself. Plaintiff persuasively distinguishes those cases involving nominal damages from the allegations now before the Court. Compare Spokeo, 136 S. Ct. 1540 (finding no injury in fact where the only alleged harm was dissemination of an incorrect zip code); Lyshe v. Levy, 854 F.3d 855 (6th

---

[8] Cavalry cites three non-binding, unpublished opinions respecting emotional damages that do not address standing and thus are readily distinguishable. Two of them decide motions for summary judgment. See Tyree v. Ocwen Loan Servicing, No. 2:14-cv-02114, 2016 WL 6210677, at *1 (W.D. Tenn. Oct. 24, 2016); Dorris v. Accounts Receivable Mgmt., Inc., No. Civ.A. GLR-11-3453, 2013 WL 1209629, at *1 (D. Md. Mar. 22, 2013). The third, Smith v. Davidson Transit Org., No. 3:08-0271, 2008 WL 4722652 (M.D. Tenn. Oct. 23, 2008), decides motions to dismiss for failure to state a claim. See id. at *3 n.3.

Cir. 2017) (same, where the defendant failed to volunteer electronic discovery to the plaintiff and required that the plaintiff's responses to certain discovery queries be sworn and notarized); Demmler v. ACH Food Cos., Inc., No. 15-cv-13556-LTS, 2016 WL 4703875 (D. Mass. June 9, 2016) (finding the individual plaintiff's claims moot where the defendant made a pre-litigation tender of $75 to the plaintiff and relabeled its allegedly defective product);[9] Hamilton v. Gen. Mills, Inc., No. 6:16-cv-382-MC, 2016 WL 4060310 (D. Or. July 27, 2016) (finding no standing where the defendant tendered a full pre-litigation refund of $15.98); and Epstein v. JPMorgan Chase & Co., No. 13 Civ. 4744(KPF), 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) (same, where the defendant tendered a full pre-litigation refund of $0.67) with Docket #1 ¶ 27 (alleging that Cavalry's conduct deprived Plaintiff of thousands of dollars and rendered her unable to feed her family, pay her bills, make car payments, and maintain her credit score and that Plaintiff suffered significant emotional damages as a result).

Cavalry's arguments thus ignore the concrete and particular harms that Plaintiff has alleged in her complaint. In contrast to cases in which plaintiffs have alleged nothing more than a technical statutory violation, Plaintiff here has allegedly lost a significant monetary sum and suffered emotional distress. For all the reasons set forth above, I find that Plaintiff's alleged economic and other injuries are sufficiently particularized and concrete for purposes of standing to litigate this case.

    2.    Fair Traceability

Second, Cavalry urges that Plaintiff's alleged injuries are not fairly traceable to its conduct because several other creditors also were pursuing Plaintiff's assets when Cavalry successfully sought to garnish her wages. See Docket #20 at 7; Docket #31 at 5-6 & n.3. This

---

[9] Once again, this case does not address standing. See Demmler v. ACH Food Cos., Inc., No. 15-cv-13556-LTS, 2016 WL 4703875, at *4-6 (D. Mass. June 9, 2016) (analyzing mootness).

argument is a nonstarter. While it appears true that Cavalry was not alone in seeking to collect Plaintiff's unpaid debts, this does not mean Plaintiff has failed to allege an injury fairly traceable to Cavalry's conduct.

Common sense demands this conclusion. Cavalry admits that it garnished Plaintiff's wages. See Docket #20 at 2-3. It also tacitly concedes that it continues to possess money to which Plaintiff is legally entitled now that Cavalry's state-court collection actions have been dismissed. See Docket #31 at 4-5 (protesting that Plaintiff never alerted Cavalry of certain checks' deficiencies but not contesting Plaintiff's claim that the checks were nonnegotiable), Docket #31-1 ¶¶ 4-5 (declaration of Cavalry's counsel) ("Had Plaintiff's counsel informed me of the alleged difficulty, I would have requested the return of the checks, deposited the check [sic] in my firm's IOLTA account, and reissued checks made out to Plaintiff."). Plaintiff's complaint alleges that Cavalry's garnishment caused her to suffer "significant hardship," including being unable to afford food or pay her bills. Docket #1 ¶ 27. These alleged harms flowed directly from Cavalry's garnishment: had Cavalry not garnished Plaintiff's wages, Plaintiff would have had access to her money and arguably would not have suffered the injuries alleged in her complaint. This clear causal connection between Cavalry's garnishment—which deprived Plaintiff of wages she earned—and Plaintiff's alleged injuries—which arose because Plaintiff could not access the money that Cavalry wrongfully garnished—is "sufficiently direct" such that this prong of standing's constitutional requirements is satisfied. Donahue, 304 F.3d at 115. In other words, I find that Cavalry is "the source" of the economic and other harms that Plaintiff claims to have suffered in this case. Municipality of San Sebastian, 89 F. Supp. 3d at 274.[10]

---

[10] Cavalry argues that it "cannot be held responsible for the independent actions of [Plaintiff's] employer and its payroll company in continuing to garnish her wages after Cavalry's counsel requested that such garnishments be discontinued." Docket #31 at 5. But the Court draws all reasonable inferences against Cavalry for purposes of this motion. See supra Section II.A. And even if Cavalry's explanation were credited, that still would not defeat

Cavalry highlights Plaintiff's admission that "approximately five other creditors had obtained judgments against her" when Cavalry filed its state-court collection actions, as well as Plaintiff's statement that she "wrongly assumed" Cavalry's garnishments were executed by one or more of those other creditors. Docket #1 ¶ 26. Contrary to Cavalry's contention, this does not mean that Plaintiff's injuries are not fairly traceable to Cavalry. Cavalry—not some other creditor—is the entity that garnished Plaintiff's wages. The fact that Plaintiff at one point incorrectly believed that another party may have been responsible for Cavalry's garnishment does not prevent her from suing the entity that actually was responsible for docking her pay.[11]

In summary, I find that Plaintiff's complaint alleges an injury in fact that is fairly traceable to Cavalry's conduct. I therefore find that Plaintiff has Article III standing to litigate her claims in this Court.

B. Statutory Standing

Cavalry also argues that Plaintiff does not have statutory standing by dint of the FDCPA. On Cavalry's telling, Plaintiff's allegation that Cavalry repeatedly sued her in state court without the required Massachusetts license is incorrect and in any case does not amount to a violation of

---

Plaintiff's standing: "Article III standing does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiff['s] injuries; it requires only that those injuries be 'fairly traceable' to the defendant." Attias v. Carefirst, Inc., 865 F.3d 620, 629 (D.C. Cir. 2017) (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1391 n.6 (2014); Orangeburg v. FERC, 862 F.3d 1071, 1079-81 (D.C. Cir. 2017)).

[11] Cavalry references a separate lawsuit that Plaintiff has filed in this District against another creditor: Oyola v. Midland Funding, LLC, No. 4:17-cv-40040-TSH (D. Mass.). The Court takes judicial notice of Plaintiff's original complaint in Midland. See Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint in another federal-court suit as a public record).
    Cavalry represents to the Court that Plaintiff seeks the same emotional damages in Midland as in the present case and suggests that this defeats Plaintiff's standing here. See Docket #20 at 7; Docket #31 at 5-6. Cavalry's representation is based on an obsolete filing. See Docket #20 at 7 (citing Ms. Oyola's original complaint in Midland, Docket #1). As the docket sheet makes plain, Ms. Oyola filed an Amended Complaint, of which the Court also takes judicial notice, before Cavalry filed the present motion. See Midland, Docket #11 (dated May 2, 2017). That Amended Complaint does not plead emotional damages. See generally id. Even if it did, Cavalry cannot escape this lawsuit merely by pointing out that Plaintiff has separately accused another creditor of illegally attempting to collect an unrelated debt.

the FDCPA, which Cavalry argues does not encompass violations of state licensure requirements. See Docket #20 at 10; Docket #31 at 7-8 & n.4. Cavalry reasons that if Plaintiff's allegations do not make out an FDCPA violation, then the FDCPA cannot generate statutory standing to prosecute this case.

As set forth above, statutory standing is non-jurisdictional and therefore improperly raised in a Rule 12(b)(1) motion to dismiss. See supra Section II.C. I therefore decline to address Cavalry's arguments on this point.

C. Mootness

Finally, Cavalry submits that this case is moot because it already has tendered to Plaintiff all the money it took from her wages. That argument, too, is flawed. Even assuming that Cavalry has tendered to Plaintiff all the garnished funds, that would not suffice to moot Plaintiff's claims.

Cavalry argues that it "tender[ed] full relief" to Plaintiff by refunding all the money it garnished. Docket #20 at 6 (citing Demmler, 2016 WL 4703875). This is not so. Merely refunding Plaintiff's money does not amount to "full relief" in this case: in addition to getting her money back, Plaintiff also seeks compensatory damages, treble damages, statutory damages, costs, interest, and attorney's fees. Docket #1 at 11. Cavalry's efforts to refund the garnished wages do not address these categories of potential liability. As the Seventh Circuit has explained in the context of a Rule 68 offer of judgment, "If the plaintiff asks for the moon, only offering the moon extinguishes the controversy." Smith v. Greystone All., LLC, 772 F.3d 448, 450 (7th Cir. 2014); see Griffith v. Sullivan, 987 F.2d 25, 27 (1st Cir. 1993) (citing Wilson v. Sec'y of Health & Human Servs., 671 F.2d 673, 679 (1st Cir. 1982)) (dismissing the plaintiff's appeal as moot because "he has already received everything that he claims he was entitled to recover").

This Cavalry has not done. Plaintiff thus retains "a concrete interest" in this case, and it remains possible for the Court to grant Plaintiff "effectual relief." Knox, 567 U.S. at 308. Accordingly, I find that the case is not moot.

## Conclusion

For the foregoing reasons, I RECOMMEND that Defendants' motion to dismiss this action for lack of subject matter jurisdiction, Docket #19, be DENIED.[12]

/s/ David H. Hennessy
Hon. David H. Hennessy
United States Magistrate Judge

---

[12] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The U.S. Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this rule waives the right to review of this Report and Recommendation in the District Court and precludes appellate review of the District Court's order based on this Report and Recommendation. E.g., Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017) (citation omitted); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168-69 (1st Cir. 2016) (citations omitted); see also Thomas v. Arn, 474 U.S. 140 (1985).